In the Matter of Acquiring Title by THE CITY OF NEW YORK to
Certain Lands and Premises Situated on the Easterly Side of
Fifth Avenue, between One Hundred and Third and One Hundred
and Fourth Streets, Adjoining the Westerly Side of Public School
No. 171, in the Borough of Manhattan, City of New York,
Duly Selected as a Site for School Purposes, According to Law.
TIBET REALTY CORPORATION, Appellant; THE CITY OF NEW YORK,
Respondent.

First Department, March 2, 1928.

Eminent domain — city of New York — condemnation of land for school
site — witness for city conceded that property would be worth more
if available for elevator apartments — error to strike out testimony
that elevator apartments were in process of erection in immediate
neighborhood.

This is a proceeding to condemn certain real property on Fifth avenue in New
York city between One Hundred and Third and One Hundred and Fourth
streets as a site for a public school. The experts for the city testified that the
property was available for institutions or cheaper grade of apartments, but
if the immediate vicinity was available for elevator apartments of a high class
then the land would be considerably more valuable than their estimates.

It was error for the court upon the hearing of the objections filed by the owner
to a tentative decree to strike out evidence then received to the effect that
several first-class elevator apartments were in the process of construction in
the immediate neighborhood of the site condemned. That evidence was
material to the issue, in view of the fact that the city conceded that the estimate
given by its witnesses was low if the property were available for high-class
apartment houses.

The mere fact that one expert for the owner testified on cross-examination that
the best use for the property would be for a public institution does not require
the affirmance of the decree, since the same witness testified that the property
was suitable for an apartment house and since it also appears that the owner's
other experts insisted that the best use for the property was for a first-class
apartment house.

DOWLING, P. J., and MARTIN, J., dissent, with opinion.

APPEAL by Tibet Realty Corporation from a final decree of the
Supreme Court, entered in the office of the clerk of the county of
New York on the 20th day of January, 1926.

Special condemnation proceeding instituted under chapter 21 of the
Greater New York Charter. (See Laws of 1901, chap. 466, § 1441,
added by Laws of 1915, chap. 596, as amd. by Laws of 1917, chap. 259.)

*Frank C. Laughlin* of counsel [*Joseph W. Kirkpatrick* and *Isaac
E. Bermant* with him on the brief; *Edgar A. Pollack,* attorney],
for the appellant.

*Henry W. Mayo* of counsel [*George P. Nicholson, Corporation
Counsel,* attorney], for the respondent.

FINCH, J.  The decree appealed from, fixing the value of land taken in condemnation by the city, must be reversed and a new trial ordered upon the ground that evidence material to the issue was stricken from the record by the learned court.

The case presented but an issue of fact as to the value of the property taken. This depended in a very large measure upon the best use for which the property was available. The property consisted of a block front in the borough of Manhattan, on Fifth avenue between One Hundred and Third and One Hundred and Fourth streets. On the one hand, it was the contention of the experts for the city that the property was limited to institutions or the cheaper grade of walk-up apartments of approximately six stories in height. To this end evidence was permitted at great length of the rents received per room in such type of apartments in the side streets and even in sections remote from the premises in question. Particularly did the experts for the city condemn One Hundred and Second street and Fifth avenue as being unsuitable for the erection of high-class elevator apartments of fifteen stories, upon the ground that One Hundred and Second street was an unrestricted street and filled with garages. The experts sought to draw likewise a conclusion detrimental to the value of the property taken upon the ground that here also no high-class apartment house would back up on a school in One Hundred and Third street immediately in the rear of the property taken. The property taken was likened to the frontage on One Hundred and Second street upon the ground that both were unavailable for this type of apartment house because of the development in the rear, namely, in One Hundred and Second street, the garages; and in the case of the property taken, the public school. The more important contention, however, urged by these experts for the city was that the Mount Sinai Hospital, situated on Fifth avenue between Ninety-ninth and One Hundred and First streets, marked the northerly boundary of the high-class apartments. The city's experts admitted that if the property was available for high-class apartments, it would add materially to the value given each lot; and there was testimony that such availability further south on the avenue increased the value approximately $25,000 a lot. The experts for the claimant, on the other hand, earnestly contended that the property was available for first-class apartment houses, maintaining that the trend of such apartment houses was along the avenue in a northerly direction. It is also apparent from this record that the entire avenue has approximately the same outlook, and with continually improving methods of transportation, slight increase in distance makes no appreciable difference.

The court at Special Term said in its opinion that he had disregarded entirely the testimony of the experts for the owner upon the ground that the values as given by them were grossly exaggerated, and, therefore, that he had relied upon the experts for the city and had taken the highest amount they had testified to and based the tentative award thereon.   Upon the due hearing of the objections filed by the owner to this tentative decree, it appeared that the important question in the case had been removed from the sphere of speculation by evidence of facts which had not been available theretofore, to wit, the commencement of the construction of several first-class elevator apartment houses in the immediate neighborhood and particularly by the commencement of the construction upon the next corner, namely, the northeast corner of One Hundred and Second street and Fifth avenue, of a fifteen-story elevator apartment house, with the iron work actually up eleven stories.   The learned court properly received this evidence. Subsequently this evidence was stricken from the record by the court upon the ground that it did not enlighten the court in ascertaining the increase in value between the date of the tentative decree and the time of the hearing, the court saying: " The Court: As I do not see anything that enlightens me along the line of finding out the increase in value between June and now I shall strike out the evidence of the witness who was on the stand, Mr. Francis B. Robert.   Mr. Bermant: Do you mean to strike out his entire testimony?   The Court:   Yes.   Mr. Bermant:  I except to your Honor's striking it out and I except to your Honor's ruling limiting the testimony to be produced only for the purpose of showing the increase of value, predicated upon your opinion of the value of the property as of the date of trial, and I desire an opportunity to prove the value of the property as of the present day."

The above evidence was most material to the issue and should not have been stricken from the record.   As already noted, the very expert upon whose testimony the final award was largely based, conceded that if the property were available for high-class, tall, elevator apartment houses, the value given by him would have been greater.

It is urged as a reason for affirming the judgment that an expert witness for the claimant testified that he had considered that the best use for the property would be for a public institution.   This was but one of three expert witnesses for the plaintiff.   The testimony was elicited upon cross-examination and this witness further testified that the property also was suitable for use as an apartment house.   As already noted, the other experts for the claimant

supported the claimant's position by positive testimony that the best use was for a first-class apartment house.

It follows that the decree appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

McAVOY and O'MALLEY, JJ., concur; DOWLING, P. J., and MARTIN, J., dissent.

MARTIN, J. (dissenting). This appeal presents for review an award of $470,525 made for property taken for a school site. The property has not been used for that purpose, for the reason that it has since been learned that additional school accommodations are not necessary in that neighborhood.

The principal ground for the appeal is based upon the allegation that the court refused to consider certain testimony given on a rehearing. The rehearing was granted at the urgent request of the attorneys for the claimant for the sole purpose of showing an increase in the value of the property between the date of the trial and the date of the rehearing.

At the close of the testimony counsel stated it was not his purpose to show that the property had increased in value between the date of the trial and the date of the rehearing; that the purpose of the testimony was to show that the basis for the opinion of the experts for the city was erroneous. The appellant argues it has a right to show that since the making of the award two or more high-class apartment houses have been under construction in the neighborhood; that such evidence would tend to show that the testimony of the experts for the city that the property in question could be best used for an institution was erroneous, and, therefore, the award was made on a wrong theory.

The award was not made on any such basis. The court inspected the premises and thereafter rendered the following opinion: " After viewing the property I award the claimant $470,525, being the value put on the property by the City's witness who gave the higher of the two valuations submitted in its behalf."

Assuming the correctness of the contention of the appellant that the award was made on the basis that the best use to which the property could be put would be as a site for an institution and not an apartment house, the award is in conformity with the testimony offered by the claimant and there is no ground for either the appeal or the statement that the court refused to consider *material* evidence.

It is asserted in the majority opinion that " The case presented but an issue of fact as to the value of the property taken," and further that " *This depended in a very large measure upon the best use for*

App. Div. 63]          First Department, March, 1928.

*which the property was available."*   It is then stated that the trial court based the award on testimony of the experts for the city, to the effect that the property could be best used for a public institution.   The important fact is that claimant's witness insisted that the property could be used to the best advantage only if used for a public institution.

Mr. Pell Thompson, the principal witness for the claimant, testified as follows:   " Q. Now what have you assumed as the best use of this property taken in this proceeding?   A. Judging from the —   Q. Never mind judging from.   Just what was your opinion of the best use?   A. A public institution.   Q. For the property taken in this proceeding?   A. Yes.   Q. What do you mean by a public institution?   A. Hospitals, school, college.   Q. You have then included in your estimate of value consideration of what the property is worth for school purposes; is that correct?   A. No. Q. What use did you have in mind when you made up your figures of $690,000 as probably the best use?   A. I believe that I could sell that property in many different channels.   Q. I didn't ask you that.   I asked you what was the best use in your opinion that you had in mind when you made up your valuation?   I didn't ask you whether you could sell it in different channels or not.   A. A public institution.   Q. No, but you have mentioned four or five, a hospital, a school or college; did you give any preference to either of these?   A. No.   Q. But just now when I asked you if you took into consideration the fact of its availability for school purposes, I understood you to say that did not affect your valuation; is that correct?   A. I said for public institution. Q. Did you in any manner base your appraisal on the consideration that this property was available for a public school?   A. No. Q. Did you on the consideration that it was available for any kind of a school?   A. No.   Q. Did you base it on the assumption it was available for a hospital, as a probable best use?   A. A public institution of some kind.   Q. *And that is as far as you care to go?* A. *That is all that I could see the property would be useful for. It might be used for an apartment house.*   Q. Now you looked up —   A. It might be used for an apartment house.   Q. But you said that your opinion —   A. It might be used for an apartment house.   Q. *I am not asking about what it might be used for.   I have asked you for your opinion of its best use and you have given them. Public institutions?*   A. *Yes.*"

The only other witness who testified for the claimant on the subject was John W. Hotaling, who testified on direct examination and not on cross-examination as follows:   " Q. What has been or what is the character of the development on Fifth Avenue at

the present time from Ninety-third Street north? A. Well, Ninety-third Street north, up to One Hundredth Street, is of the character such as fourteen, fifteen-story apartment houses and north of that, it is an institutional character and also of apartment houses, not quite so much in their height but of the modern construction."

It is clear, therefore, that the award is in strict conformity with the testimony of all the witnesses including the witness for the claimant that the best possible use of this property is for the construction of an institution. This is especially true in view of the fact that the property is surrounded by institutions; on the north of the plot is the Heckscher Home, a children's shelter; on the rear a public school house, and on the south a medical society building.

The failure to open the case to show that one of the witnesses for the city might have been mistaken in his testimony is not a ground for the reversal of the award, especially in view of the fact that it was conceded by the attorneys for the claimant that their witnesses did not intend to change their testimony as to valuations, the sole purpose being to show that apartment houses were being constructed in the neighborhood.

In view of the testimony offered by the claimant that the best possible use of the property was for the building of an institution, claimant is not now in a position to contend that the court should have assumed that the best use would be for an apartment house.

It is evident that the appellant is anxious for a retrial of the issues in the hope of increasing the award and has seized upon the alleged error in rejecting the testimony as a possible ground to bring about such a result.

The award was correct and should be affirmed, with costs.

DOWLING, P. J., concurs.

Decree reversed and new trial ordered, with costs to the appellant to abide the event.